IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
COLUMBUS, OHIO

| | | |
|---|---|---|
| LINDA NOURI, | : | Case No. JUDGE MORRISON |
| | : | |
| Plaintiff, | : | Judge MAGISTRATE JUDGE VASCURA |
| vs. | : | |
| | : | COMPLAINT FOR |
| State of Ohio | : | DECLARATORY JUDGMENT |
| Hamilton County Court of Common Pleas | : | AND INJUNCTIVE RELIEF |
| Judge Terry Nestor (Official Capacity) | : | |
| Magistrate Anita Berding (Official Capacity) | : | HEARING REQUESTED |
| Defendant. | : | |

Plaintiff Linda Nouri *Pro Se*, submits this complaint respectfully requesting Declaratory

Judgment that Ohio Rev. Code 5311 entitled "Condominium Property" ("Act") is fraught with

Constitutional[1] violations including in following: **(1)** it suppresses condominium Unit Owners'

Procedural Due Process on its face, and as applied to Ms. Nouri; **(2)** where 5311.18 proscribes a

Unit Owners' ability to utilize affirmative defenses, counterclaims, and crossclaims in a

foreclosure action it **(a)** denies Unit Owners, such as Ms. Nouri Equal Protection **(b)** abridges

Ms. Nouri's (and other similarly situated Unit Owners) rights and privileges as citizens to

provide a defense, make claims, and be heard in open court; **(c)** flouts the Ohio Supreme Court's

authority under Article IV, Section 5(B) to prescribe the rules governing practice and procedure

in all courts of the state, and **(d)** is in direct contravention with the separation of powers doctrine;

**(3)** it breaches Art. 1, Sec. 10, Clause 1 where its statutory amendments infringe, hinder, impedes

and impair condominium Unit Owners' ability to hold their Association accountable to their

---

[1] It is Plaintiff's position that the unconstitutionality of this statute as violative of the U.S. Constitution is dispositive under Federal case law and therefore brings it before this Court on federal grounds. Plaintiff recognizes however, that the Act may also simultaneously violate the Ohio Constitution and therefore chooses to preserve those arguments by submitting them in this pleading concurrently.

contractual and legal obligations; **(4)** so much so that it in effect confers a title of nobility to Condominium Owners' Associations and their Board of Directors/Managers.

Ms. Nouri is before this court as a Pro Se litigant because she was trying to thwart the criminal activities of her condominium association board, their property management company, and their attorneys. She could not have begun to guess her attempt to fight injustice would have resulted in facing foreclosure.

In May of 2020, the Arbor Woods Condominium Owners' Association Board ("Board") committed secured "writings by deception,[2]" distributing what they positioned to the condominium community as a "COVID Waiver" but substantively waived significantly more. The Board locked unit owners out of the swimming pool and gym – property Ms. Nouri and other association members hold as tenants in common – and refused to return access unless the waiver was signed.

Ms. Nouri made attempts to help the Board help themselves, notifying them of the illegality of their actions, and the conflict with the Arbor Woods Condominium Owners' Association ("COA") governing instruments. However, both the Board, and the COA's attorney were unresponsive. To mitigate her damages,[3] offset moneys owed to her by the COA,[4] and hoping to improve her bargaining power, Ms. Nouri directed the COA's property management company to cancel the automated withdraw of her assessment payments.

---

[2] ORC 2913.43

[3] "Under Ohio law, 'an injured party is under a duty to mitigate its damages and may not recover those damages which it could have reasonably avoided.'" *Infocision Management Corp. v. Foundation for Moral Law Inc.* (N.D. Ohio, 2012) (*citing Wilson v. Kreusch*, 111 Ohio App. 3d 47, 52 (Ohio Ct. App. 2d Dist. 1996)).

[4] Ms. Nouri was awaiting repair of damages done to her property because of a leaky roof and subsequent roof repair, both responsibilities of the Association. Additionally, moneys were owed and would continue to be owed to Ms. Nouri as a result of being ousted from the Recreational Areas. It is well established in Ohio an ousted co-tenant is owed rents and profits from the tenant(s) in possession of the property. *West v. Weyer*, 46 Ohio St. 66, 18 N.E. 537 (Ohio 1888); *Collins v. Jackson*, 34 Ohio App.3d 101, 517 N.E.2d 269 (Ohio App. 1986); *Sullinger v. Reed* (Ohio App. 2021).

Little did Ms. Nouri expect that the injustice be prolonged because rather than engage in dialogue and negotiations, the COA, by way of their attorney, filed a lien against her property and subsequently filed for foreclosure.  Now two years later, the matter remains unresolved, and Ms. Nouri's title remains clouded, and her credit and reputation are stained.

It is vital that Ms. Nouri's title is cleared and remains clear whilst this litigation determines who owes who.  A blighted title impacts the re-financing agreement Ms. Nouri entered into with her bank back in 2020.  A lien disqualifies her for the re-financing, which lowered her mortgage payments, and extended the terms of her mortgage.  Should the lien remain, Ms. Nouri will lose not only those terms, but will also have a significant balloon payment due as a result of the disqualification and be subject to the bank's foreclosure.

This prejudicial attachment, predicated on what is literally criminal behavior by the Association, demonstrates very well why both the Supreme Court of the United States and the Supreme Court of Ohio have held that attachment statutes must have due process procedural safeguards.

Ms. Nouri brings this case in Federal Court because only recently – approximately one year from their filing date, and only months before litigation is scheduled to begin – did the attorneys for the COA file a summary judgment pleading relying on ORC §5311.18(B)(6), arguing that Ms. Nouri is precluded from asserting her defenses or making counterclaims.  While there is not a Supreme Court of Ohio decision on point, other courts in Ohio have thus far have upheld the constitutionality of this clause.  Many litigants have had their homes foreclosed on because their due process rights were violated.

Thus, the need for Ms. Nouri to bring this case before this honorable court.  The issues Ms. Nouri brings here on federal grounds will be dispositive to her case in the district state court.

A ruling in Ms. Nouri's favor will not only right the wrongs being done to her, but it will also correct the course of due process afforded to the citizens of Ohio into the future.

Because the unconstitutional deprivation of Ms. Nouri's property has caused, is now causing, and will continue to cause irreparable harm, a Temporary Restraining Order and/or Preliminary injunction pleading is shortly forthcoming.

And because a Temporary Restraining Order and/or Preliminary Injunction does not prejudice the parties involved, Ms. Nouri respectfully requests this court to issue an order to stay Ms. Nouri's foreclosure case pending a full hearing on the matter.

/s/ Linda A. Nouri
Linda A. Nouri
Plaintiff, *Pro Se*
L.Nouri.Law@gmail.com

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and §1343, 42 U.S.C. § 1983, and 28 U.S.C. § 1367. This case presents a federal question involving constitutionally protected rights. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

Venue is proper in this Court Pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Hamilton County in the Southern District of Ohio, all Defendants are residents of Ohio, and the claims concern or otherwise relate to real property located in Hamilton County in the Southern District of Ohio.

## PARTIES

Plaintiff Linda Nouri ("Ms. Nouri") is an adult resident of Hamilton County, Ohio. *Living at 4921 N Arbor Woods Ct # 304 Cincinnati OH 45248*

Defendant State of Ohio may be served with process through the Attorney General of Ohio at 30 E. Broad St., 14th Floor, Columbus, Ohio 43215.

Defendant Hamilton County Court of Common Pleas is an Ohio trial court authorized under state law to issue orders imposing foreclosure on property liens in Ohio. It is located at 1000 Main Street, Cincinnati, Ohio 45202.

Defendant, Terry Nestor is a judge of the Hamilton County Court of Common Pleas. Judge Nestor is assigned as the presiding judge over Ms. Nouri's civil case.

Defendant Anita Berding is a Chief Magistrate at the Hamilton County Court of Common Pleas. Magistrate Berding has been presiding and is at the time of this pleading's filing continues to preside at hearings in Ms. Nouri's civil case.

## STATEMENT OF FACTS

### Statute Related

1. Ohio statutorily sanctioned the creation of condominiums and condominium ownership in 1963 by enacting the Condominium Property Act ("Act".) ORC §§ 5311.01-.22.

2. This Act regulates: (1) the creation of a condominium property; (2) the rights, interests, and obligations of the individual owners; (3) the administration/governance of the property by an Association; (4) the rights, authorities, interests, and obligations of the Association; (5) the rights, authorities, interests, and obligations of creditors and/or lienors; and (5) the dissolution/removal of the property from the Act. §§ 5311.01-.27.

3. A condominium purchaser buys two types of real property: (1) a "Unit" (i.e. specific dwelling) to which the Unit Owner has individual and unique ownership in fee-simple; and (2) joint title as a tenant in common with undivided interest to land upon which her unit is located along with any other land and/or dwellings that may serve the Unit. *An Examination of the*

*Current Ohio Condominium Law* by Patricia McQuillen Billow, Pg. 119; ORC §§ 5311.01[5],

5311.03, 5311.04; *See* Baldwin's Ohio Condominium Law by Kenton L. Kuehle and Charles T.

Williams, 2020-2021 Edition, Pg.1.]

4.      The property that Unit Owners share as tenants in common are called "common

element(s)," and/or "common area(s)." §§ 5311.01, 5311.04.

5.      To manage the administration of the condominium property, each Condominium

development is required to form a Unit Owners' Association.  §§ 5311.01, 5311.08.

6.      The Unit Owners' Association operation is governed by both the property and

corporation laws of Ohio.  The instruments that steer their operation include: (1) their Articles of

Incorporation; (2) the property's Declaration; and (3) the property's By-Laws.  §§ 5311.01-.27;

1701; 1702.

7.      Through a "Declaration" that is filed with the County Recorder's Office, the Unit Owners

contract with one another to pay a proportion of the common costs/expenses required to

administer and maintain the property they own, use, and enjoy as tenants-in-common.  §§

5311.01(D, F, H), 5311.03(G), 5311.04(F), 5311.08(B)(5), 5311.09(A), 5311.14(A), 5311.15,

5311.16, 5311.18(A,C), 5311.21, 5311.25(F), 5311.26(F).

8.      Not all costs are common (i.e. shared) and chargeable proportionately across the Unit

Owners.  §§5311.01(D, F, H), 5311.03(G), 5311.04(F), 5311.08(B)(5), 5311.09(A), 5311.14(A),

5311.15, 5311.16, 5311.18(A,C), 5311.21, 5311.25(F), 5311.26(F).

9.      A Unit Owners' Association uses "assessments" to charge individual Unit Owners their

portion of the property's operational costs/expenses.  There are two kinds of assessments: (1)

---

[5] There is a second type of ownership interest that pertains to leasehold condominiums, but that definition does not apply to the property at issue, therefore the fee-simple ownership example is offered here. Ms. Nouri's condominium property is owned in fee simple.

6

Common assessments are charged proportionately to the Unit Owners as tenants in common for their share of the expenses used for common (i.e. shared) purposes as related to their property; [§5311.01; §5311.21]   and (2) Special Assessments are those costs charged to specific Unit Owners for any fees, charges, or costs applicable to their specific Unit that is not part of the common assessments. *See* §§ 5311.01 (G); 5311.19.

10.     The Act allows for Unit Owners' Associations to place a prejudgment lien upon a Unit for "failure" to pay timely assessments.  The 2002 version of the statute required the lien be subscribed by the President or other chief officer of the Association, presumably someone with first-hand knowledge of the facts.  However, the current version allows for a designated representative of the association.  Someone who may or may not have first-hand knowledge of the facts.  The statute is also silent on who designates the representative, and whether or not designation requires a vote by either the Association's Board or members of the Association. *Compare* §5311.18 (2002) to 5311.18 (current).

11.     The COA's lien is an attachment.  *Compare* to definition of attachment "The seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment." *Black's Law Dictionary*, Tenth Edition, Brian Garner Editor.

12.     In 1980 the Ohio Supreme Court stated that statutes providing for prejudgment attachment must meet a minimum of five requirements in order to be considered constitutional. *Peebles v. Clement*, 63 Ohio St.2d 314, 408 N.E.2d 689 (Ohio 1980)

13.     The Ohio Supreme Court's decision in *Peebles* relied upon a series of cases in the Supreme Court of the United States (SCOTUS) that focused on due process as related to prejudgment attachments of personal and real property.  *See Peebles v. Clement; Snidach v. Family Finance Corp*, 395 U.S. 337 (1969); *Fuentes v. Shevin*, 407 U.S. 67 (1972), *Mitchell v.*

*W.T. Grant Co.*, 416 U.S. 600 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975); *Matthews v. Edridge*, 424 U.S. 319 (1976).

14.     SCOTUS subsequently continued to extend its holdings regarding prejudicial seizures of real property to make it very clear that, absent "extraordinary circumstances," they violate due process. *Connecticut v. Doehr*, 501 US 1 - Supreme Court 1991; See also *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993)

15.     The Ohio legislature was aware of these holdings by the Ohio and U.S. Supreme Courts and changed their general attachment law to comport with the Ohio Supreme Court's ruling in *Peebles*. *Compare* ORC 2715 before *Peebles* to current version; See also *Creditor's Rights in Ohio: An Extensive Revision*, by Peggy M. Coleman et al, Akron Law Review, July 2015, Pgs. 487 – 515.

16.     However, the Ohio legislature knowingly and purposely chose not to make any changes to the Condominium Act to comport with even one of these requirements.  The Act does not require the UOA to furnish a bond or other security to compensate the Unit Owner in the event of a wrongful seizure.  It does not require that the affidavit to be filed include specific facts forming the basis for the prejudgment seizure.  It does not require a judicial officer pass upon the sufficiency of the facts alleged in the affidavit.  It does not provide for dissolution for the seizure upon the positing of a bond by the unit owner.  Nor does it provide for an immediate right of hearing to the defending Unit Owner, where the Association be required to prove that the seizure is warranted. §5311.18

17.     Inapposite to these holdings, rather than afford due process procedures, in 2004 the Ohio legislature amended to the Act to proscribe Unit Owners' due process, reducing the availability for post-seizure remedies, that were previously available.  [*Compare* §5311.18 (2002) to 5311.18

(current) (specifically (B)(6) which states: "In any foreclosure action, it is not a defense, set off, counterclaim, or crossclaim that the unit owners association has failed to provide the unit owner with any service, goods, work, or material, or failed in any other duty.")]

18.     Additionally, where the Ohio legislators chose to change §5311.18, and other sections of the Act, to strengthen the position of the Association and weaken the position of the Owners, the changes impair the obligations of the contract between the Owners and the Association. It greatly reduced Owners' ability to have direct and productive discussions with their Association's Board. It impaired the Owners' abilities to negotiate a resolution including by means of withholding payment to force the Association's compliance their contractual and legal obligations. *See Bridgecreek Condominium Owners' Association v. Doris Robinson* 2021 Ohio 1042 (Ohio App. 2021) (where Ms. Robinson's association changed the nature of trash collection from individual unit owner's trash can collection, to having a common dumpster collection without a vote, and increased members' assessments to include the cost of the dumpster collection, and Ms. Robinson withheld the cost of the increase and was subsequently foreclosed on as a result.); *See also Paul Bridge v. Arbor Woods Condominium Owners' Association,* 21CV05152 (where under their Declaration, the Association was responsible for insuring and repairing garage doors for vandalism, but refused to pay for Mr. Bridge's door when it had been vandalized to no fault of his own. Rather than be able to withhold assessments as leverage and/or a set-off for the minimal cost of his garage door as anyone who was not a condominium owner might do, the Act required Mr. Bridge to hire an attorney and sue the Association. While Mr. Bridge won his case, the judge then failed to award Mr. Bridge attorney fees. Despite the fees being statutorily mandated under 5311.19, Mr. Bridge said the judge's position was that

Ohio is an "American Rule" state and made Mr. Bridge carry his own costs. Mr. Bridge paid over four times the cost of his garage door in attorney fees.)

19.     Ohio has had a Lis Pendens Statute on its books since 1953. ORC §2703.27

20.     Ohio has a separate Homeowners' Association statute, which does not include a parallel section to 5211.18(B)(6).

21.     Upon information and belief, the demographics of condominium owners, including gender, race, age, and financial income differs from the demographics of the average owner of a stand-alone home, where condominium owners skew higher for gender as female, skew higher in age groups for senior citizens, and skews higher for minorities.

**Specific to Ms. Nouri**

22.     Plaintiff, Linda Nouri owns a condominium unit located within the Arbor Woods Condominium development. When Ms. Nouri purchased her condominium unit, she was not given any disclosures by the seller, the seller's real estate agent, or her own real estate agent regarding the condominium instruments prior to the closing of the sale of the condominium unit. She was also not aware or made aware that ORC 5311 ("Condo Act") existed and governed the property she was planning on purchasing prior to the closing of the property.

23.     The Arbor Woods Condominium development is purportedly established pursuant to ORC §5311 by developer Hal Homes ("developer.") To do this, Hal Homes formed a non-profit corporation – Arbor Woods Condominium Owners' Association, Inc. ("COA") – on September 17, 1997. As a non-profit corporation the COA is subject to ORC §1702. Subsequently, the developer filed a "Declaration of Condominium Ownership" with the Hamilton County Recorder on September 22, 1998.

24.     The COA is prohibited by its own Articles of Incorporation ("Articles") from taking any action or entering into any transaction or agreement in a manner which would violate any provision of Chapter 5311, its Articles of Incorporation, its Declaration, or its By-Laws, never the less they do so frequently.

25.     The COA's business is managed by a Board of Trustees pursuant to ORC 1702. This Board of Trustees acts as the "Board of Managers" ("Board") defined in ORC 5311.

26.     The governing documents include the Articles of Incorporation, the Declaration, and the Bylaws. Despite being required by law to adhere to the COA's governing documents, the Board repeatedly fails to do this.

27.     Approximately in May 2020, the Arbor Woods Condominium Board of Managers ("Board") unilaterally revoked all Unit Owner's electronic key-card access to the Recreational Facilities ("Facilities") and demanded that the Unit owners sign a waiver in exchange for regaining access to the Facilities. The Facilities are property that Unit Owners hold as tenants-in-common.

28.     Hindering Ms. Nouri's and the other Unit Owners' access is an encroachment by the Board. It is also in direct violation of §5311.04.

29.     The majority of the COA's Unit Owners are senior citizens, who at the time of signing the waiver did not understand that the interests of the Association may conflict with their own individual/personal interests as a Unit Owner. The Unit Owners were not notified of the possible conflict of interest. Nor were they encouraged to seek independent counsel before signing the waiver. Many signed the waiver because they thought they were required to.

30.     Ms. Nouri refused to sign the waiver and demanded access to the Facilities be returned to her. She attempted to engage in dialogue with the Board, Property Management Company, and

the Association's legal counsel to come to a resolution on the matter. She reminded them that she owned the Facilities as a tenant-in-common and pointed out that what they were doing was criminal[6], but was stonewalled time and time again.

31.     The practice of stonewalling and ignoring the Unit Owners is a common practice of the Association's Board Members, their Property Management Company ("Towne Properties"), and their Debt Collections and Legal Counsel – Cuni, Ferguson, & LeVay ("CFL".)

32.     To mitigate her losses for damage to her Unit caused by the Association's malfeasance, and the set offs created by being ousted[7], Ms. Nouri revoked her permission for the automatic withdrawal from her bank account for COA assessments on June 1, 2020.

33.     Ms. Nouri had forewarned the COA's Board Members and Towne Properties this was something she would do if they did not follow through on repairs to her Unit and return access to the Recreational Facilities.

34.     It is well established that Ohio law provides that an ousted tenant in common may recover from the tenant(s) in possession of the property for rents and profits. ORC 5307.21; *West v. Weyer*, 46 Ohio St. 66, 18 N.E. 537 (Ohio 1888); *Cohen v. Cohen*, 106 N.E.2d 77, 157 Ohio St. 503, 47 O.O. 363 (Ohio 1952); *William Modic v. Robert Modic* (Ohio App. 1993); *Sullinger v. Reed* (Ohio App. 2021).

35.     Ms. Nouri requested financial documents in an effort to calculate the specific setoffs. However, she was stonewalled on this also. They were not provided, and to this date she has

---

[6] ORC 2913.43 prohibits causing a person to execute any writing by deception that disposes of or encumbers property, or by which a pecuniary obligation is incurred. Any person who does so is guilty of the crime "securing writings by deception." See also: ORC §§ 2913.02; 2911; 2913.01; 2913.02; 2923.02; 2905.03.

[7] See *Grimes v. Moreland*, 41 Ohio Misc. 69, 322 N.E. 2d 699, 70 O.O.2d 134 (Ohio Ct. Com. Pl. 1974) where places fencing on common area property was found to be an ouster in a condominium case.

never received a response to her requests for the documents. Fulfilling the request for financial documents is mandated by the COA's Declaration as well as statutorily mandated by §5311.091.

36.     Rather than engage in any dialogue about the issues of unrepaired damages to her Unit or the impermissible ouster, the COA, Towne Properties, and CFL on the whole ignored Ms. Nouri's attempts to communicate and come to resolution.

37.     CFL primarily serves as the COA's debt collection agency, but also has served in the capacity of 'legal counsel' providing legal advice on various subjects of interest to the COA.

38.     On August 21, 2020 the COA by and through CFL filed a certificate of lien against Ms. Nouri's property. The lien claims that Ms. Nouri's "unpaid portion of assessments, late fees and administrative fees" were "$870.00 through August 31, 2020." And also indicated $350.00 owing for the filing and release of the lien.

39.     Notwithstanding Ms. Nouri's ouster, the Association was charging Unit Owners $245.00 for Assessments in 2020. Which would make a total of $735.00 for the Months of June, July, and August. Additionally, if she were 'late' (which she was not because she had been ousted), the late fees for June, July, and August would total $60.00. Both of these added together would total $795, not $870.

40.     If the $75 difference was not a computational error and is somehow being charged as an "administrative fee," neither the COA's Declaration nor the Statute provides for an "administrative fee" to be charged to a Unit Owner and is in blatant violation of the Declaration and the Act.

41.     Upon information and belief, Attorney Ferguson signed and filed the lien: (1) even though the COA's Declaration requires that a lien be subscribed by the President of the COA; (2) despite not having first-hand knowledge of whether or not debts were owed to the Association;

13

and with knowledge of Ms. Nouri's ouster. As a prominent property law attorney, Attorney Ferguson knew or should have known that an ousted co-parcener is not obligated for expenses in Ohio and has the right to receive rents and profits from the tenant(s) in possession of the property. This lien was very likely filed in bad faith by Attorney Ferguson.

42.     On August 28, 2020, a letter was addressed to Ms. Nouri notifying her of the lien that had already been filed. It did not offer any means by which to dispute the debt. It did not provide any notice of the foreclosure clause in the Act. It did not provide notice or a means by which Ms. Nouri could have an opportunity to be heard by the Board pursuant to 5311.81. The letter simply made a demand for "870.00 for assessments and late fees through August 31, 2020 plus a legal fee for the placement of the lien of $350.00."[8] The letter demanded $1,220.00 by check or money order payable to Arbor Woods mailed to Towne Properties.

43.     And despite claiming to be the COA's legal representatives, CFL directed Ms. Nouri to engage in dialogue with Towne Properties instead of themselves.

44.     Attorney Ferguson was at the time of the letter she mailed aware that Ms. Nouri had just become a newly licensed attorney in the state of Ohio. She was also aware that it is against Ohio's Code of Professional Conduct to engage in conversations about legal matters with a party that is represented. O.R.P.C. 4.2

45.     Having just passed the bar as a newly licensed attorney Ms. Nouri was concerned with not violating Ohio's Rules of Professional Conduct regarding contacting represented parties, Ms. Nouri sought clarification via email from the Board on whether or not the COA was represented regarding this matter. Once again, she received no response.

---

[8] This would suggest that their math was faulty as it only points to assessments and late fees.

46.     The Act has enabled property management companies and condominium association attorneys to act scrupulously to work in tandem to gouge condominium associations and their members for unwarranted and unnecessary attorneys' fees.

47.     This is the practice that Towne Properties and CFL has engaged in acting as representatives/agents of Ms. Nouri's COA. These same entities also do this in a number of other associations throughout the city of Cincinnati.

48.     Towne Properties and CFL have a long-standing relationship where CFL is funneled debt collection and legal work by Towne Properties. Their relationship has a long history where they sit on committees together, donate to one another's charities, and CFL has gone so far as to represent Towne Properties in legal matters in the past.[9]

49.     Upon information and belief, CFL was involved in the drafting or in the alternative, in the enforcement of the waiver, which includes a clause that waives the ability of Unit Owners from filing claims against Towne Properties.[10]

50.     Rather than make any phone calls or send any letters themselves on behalf of the COA, Towne Properties modus operandi for managing any payments they consider "late," is to immediately involve CFL as the 'debt collectors' to print out a form letter to the respective Unit Owner. CFL tacks on attorney's fees for this letter and tacks it onto the supposed debt owed by the Unit Owner.

51.     These entities did this to Ms. Nouri, to other Unit Owners in Ms. Nouri's COA, and to Unit Owners in other associations involved with Towne Properties and CFL collectively.

---

[9] Where this would be considered a conflict of interest and require disclosure and waiver the condominium associations, Ms. Nouri knows of no waiver signed by the COA to recognize and waive conflict of interest concerns.
[10] When Ms. Nouri called Attorney Ferguson, to discuss the situation with the waiver, Ms. Ferguson 'lawyered up' and had Attorney Conn, another partner in the firm communicate that Attorney Ferguson could not discuss whether or not she drafted the waiver due to "attorney-client privilege."

52.     Ms. Nouri has never to date been offered a hearing by the COA regarding this matter.

53.     The lien has negatively impacted Ms. Nouri a number of ways including but not limited to the following:

(A) This lien: is currently clouding Ms. Nouri's title, damaged Ms. Nouri's credit score and will continue to do more damage the longer it remains; caused Ms. Nouri to publicly be the subject of ridicule; limits Ms. Nouri's career opportunities as many positions in her profession require a background check and credit check.

(B) Ms. Nouri negotiated a refinance of her home in 2020 from which she will be disqualified if the lien from her property is not removed immediately. If the lien remains, Ms. Nouri will owe a substantial balloon payment of over $10,000 and will be subject to foreclosure.

(C) Ms. Nouri has been and continues to be impeded from obtaining employment due to the depth and breadth of legal research required on all the facets this legal battle.

(D) Being homeless is one of Ms. Nouri's greatest life-long fears and is primary cause of Ms. Nouri's current stresses, frustrations, and angst.

(E) All of Ms. Nouri's healthcare providers identified stress as a major contributor, and aggravating factor to several of her health conditions these last two years.[11]

(F) This entire process has violated Ms. Nouri's privacy because intimate details of her life are now on record for the world to see.

(G) Ms. Nouri has lost and continues to lose the freedom to associate with her neighbors at community functions for the last several years when the COA holds functions at the Facilities that Ms. Nouri is unable to access.

---

[11] Ms. Nouri has privacy concerns regarding placing specific health conditions onto the record and therefore is being general regarding those conditions for the purposes of this pleading.

(H) Neither Hamilton County nor the State of Ohio has a process by which an unwarranted lien may be erased from the record of the property or the connection to the property owner. Once it is there, it is there forever. This lien will remain a blight on Ms. Nouri's property record forever.

### FIRST CAUSE OF ACTION – DECLARATORY RELIEF

**Declaratory Relief Establishing the Unconstitutionality of 5311 For One or More of the Following Reasons: Violating Due Process, Unreasonable Seizure of Property, Impairing the Obligation of Contracts, Infringing on Equal Protection, and Violating Ohio's Separation of Powers Requirements**

Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

This claim for relief arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article IV of the Ohio Constitution, and 42 U.S.C. §1983.

An actual controversy exists between Ms. Nouri and the State of Ohio with regard to her constitutionally protected rights to Due Process and to her property being free from unreasonable seizure without due process of law or financial compensation.

Ms. Nouri is entitled to declaratory judgment establishing the unconstitutionality of O.R.C. §5311 both facially and as applied where:

(a) the State of Ohio deprived Ms. Nouri and other condominium owners similarly situated to her of full use and enjoyment of her home by enabling her condominium association and/or its representatives/agents to seize it through a prejudicial lien.

(b) the State of Ohio knowingly and intentionally deprived Ms. Nouri and other condominium owners of due process procedures that are afforded to members of homeowners' associations, and home owners who do not participate in associations where they are afforded the opportunity to for affirmative defenses, counterclaims, and crossclaims based on the other

17

party's breach of contract regarding failure to provide services, goods, work, materials, or failure in any other duty.

(c) The State of Ohio deprived Ms. Nouri of procedural due process rights by writing a statute that governs judicial procedure, they knowingly and intentionally violated Ohio Constitution. It has long been established that Article IV, Section 1, of the Ohio Constitution vests judicial powers of the state exclusively to the courts, and that Article IV, Section 5 vests the power to "prescribe the rules governing practice and procedure" in the Supreme Court. Where 5311.18(6) is dictating procedure in violation to the rules of civil procedure, it is in conflict with those rules and "shall be of no further force or effect" because the rules of procedure allow for and even sometimes require counterclaims, crossclaims, and defenses.

## SECOND CAUSE OF ACTION – INJUNCTIVE RELIEF

### For Injunctive Relief to Prevent the Continued Deprivation of Plaintiff's Constitutional Rights

Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

Enforcement of 5311 constitutes an imminent and ongoing threat by the State of Ohio, acting by and through Defendants and Condominium Associations across the state to deprive Ms. Nouri and condominium Unit Owners of their civil rights and constitutionally protected property rights.

Ms. Nouri has suffered, is suffering, and will continue to suffer – and other condominium Unit Owners have suffered and will suffer – irreparable injuries if their due process rights in respects with their condominium properties continue to be violated, where Ms. Nouri and/or other condominium Unit Owners are deprived of procedural safeguards regarding prejudgment

attachments/liens against their condominiums are put into effect to follow SCOTUS's safeguards or the Ohio Supreme Court's. Safeguards such as:

(a) Adequate prejudgment notice

(b) Requirements that an affidavit be filed alleging personal knowledge of specific facts forming a basis for seizure

(c) A requirement that a judicial officer pass upon the sufficiency of the facts alleged in the affidavit

(d) Requirement for an immediate meaningful adversarial hearing where the plaintiff must prove its burden to demonstrate that seizure is warranted and where the defendant may cross examine witnesses and provide evidence.

(e) Require the plaintiff to furnish an appropriate bond or other security to compensate a defendant in the event of wrongful seizure

(f) Provide for dissolution of the seizure upon the posting of a bond by defendant

(g) Provide for a means by which wrongful liens are not only extinguished, but they are also eliminated from the County's records.

The Act deprives Ms. Nouri, and others similarly situated, of the right to due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution without a compelling state interest.

Pursuant to 28 U.S.C. § 2201, Ms. Nouri respectfully requests the Court to enter a declaratory judgment stating that the Act violates Ms. Nouri's rights and 42 U.S.C. § 1983 and enter a permanent injunction enjoining enforcement or application of prejudicial attachments/liens to condominium owners.

Additionally, Ms. Nouri respectfully requests the Court order Judge Nestor and Magistrate Berding provide a stay and/or postpone proceedings on the litigation between Arbor Woods Condominium Association and Ms. Nouri, pending a final decision regarding the merits of the constitutionality of the statute as related to 1) prejudgment seizures; 2) separation of powers as applied to 5311(6); 3) the impairment of the obligation of contracts by Ms. Nouri (and other similarly situation Unit Owners) because of the changes from the 2002 version of the statute to the current version, any of which will have a significant impact on the outcome of the proceedings.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Linda A. Nouri prays the Court for an entry of judgment in her favor and against Defendants as follows:

1. A declaratory judgment, pursuant to 28 U.S.C. §2201 declaring the Act violates Ms. Nouri's (and other condominium owners') rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2. A permanent injunction enjoining enforcement and implementation of prejudicial seizures on condominium property, by way of prejudgment attachment/liens.

3. A judgment awarding Plaintiff its damages and costs of suit, including reasonable attorneys' fees under 15 U.S.C. § 1117 and 42 U.S.C. § 1988; and

4. Any other relief to which Plaintiff may be entitled under justice and equity.

Respectfully Submitted,

/s/ Linda A. Nouri
Linda A. Nouri
*Pro Se* Plaintiff
L.Nouri.Law@gmail.com